UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JOSIF KOVACO | : | |
| | : | |
| v. | : | CIV. NO. 3:11CV377 (WWE) |
| | : | |
| ROCKBESTOS-SURPRENANT | : | |
| CABLE CORP. | : | |

RULING ON DEFENDANT'S RENEWED MOTION IN LIMINE TO
PRECLUDE EXPERT TESTIMONY [Doc. #93]

Plaintiff Joseph Kovaco brings this action against
defendant Rockbestos-Surprenant Cable Corp. alleging, inter
alia, discrimination and retaliation in violation of the
Americans with Disabilities Act ("ADA") 42 U.S.C. §12101, the
Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §621-
634, Title VII of the Civil Rights Act of 1964 ("Title VII") 42
U.S.C. §200e et seq., the Family Medical Leave Act ("FMLA") 29
U.S.C. §2601 et seq., Connecticut General Statutes §46a-60(1)(1)
and (a)(4), and Connecticut common law. [Amend. Compl., Doc.
#10].  Plaintiff alleges discrimination on the basis of
disability, age, national origin, and use of medical leave.[1]

Defendant moves to preclude the proffered testimony of
plaintiff's expert John McNamara, on the basis that his proposed
expert testimony is not reliable, usurps the function of the
jury, and is prejudicial. [Doc. ## 49, 93].[2]  Plaintiff argues,

---

[1] On September 25, 2013, Judge Eginton granted defendant's motion for summary
judgment on plaintiff's FMLA retaliation and intentional infliction of
emotional distress claims. [Doc. #106].  Plaintiff's remaining claims, in
pertinent part, include those for accommodation, and retaliation under Title
VII, the ADA, the ADEA, and Connecticut state law.  [Id.].

[2] On March 27, 2012, plaintiff on served defendant the expert disclosure and
report of John McNamara.  On May 10, 2012, defendant filed a motion in limine
to preclude Mr. McNamara from testifying in accordance with his initial
expert report. [Doc. #49].   The day before the deadline for plaintiff's

1

inter alia, that Mr. McNamara's proposed testimony meets the requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L. Ed. 2d 469 (1993), and that it would be a "significant injustice" to preclude Mr. McNamara's testimony in light of the "substantial investment" plaintiff has made in retaining Mr. McNamara and complying with the Court's ruling on the motion to strike. [Doc. ##47, 114; see footnote 2, supra].  For the reasons that follow, defendant's renewed motion in limine to preclude expert testimony is GRANTED IN PART AND DENIED IN PART.[3]

## I.  Background

Mr. McNamara is a senior human resources executive who served as the Director of Human Resources for Philip Morris USA for nearly eighteen years. [Doc. #47-1, Ex. C].  Since leaving Philip Morris, Mr. McNamara has served as CEO of McNamara & Associates, Inc., which provides "full-service Organization and Management Development consulting (sic)" and offers expertise in employee relations, sexual harassment, training, and policy and program design, amongst others. [Id.].

response to the motion in limine, plaintiff served defendant with Mr. McNamara's revised expert report. On October 31, 2012, defendant filed a motion to strike the revised expert report. [Doc. #49]. The Court denied defendant's motion in limine without prejudice to re-filing upon the Court's determination of the motion to strike. [Doc. #65].  On April 15, 2013, the Court denied defendant's motion to strike on the condition that plaintiff reimburse defendant for the cost of preparing and filing the motion in limine. [Doc. #83].  Plaintiff paid defendant such costs, thereby making the revised expert report operative. [Doc. #93].  Defendant thereafter filed the renewed motion in limine. [Id.].

[3] The Court has considered the following documents in ruling on the renewed motion in limine: defendant's motion in limine and supporting memorandum [Doc. #26]; plaintiff's objection [Doc. #47]; defendant's reply in further support of the motion in limine [Doc. #51]; plaintiff's reply to defendant's motion in limine and motion to strike [Doc. #52]; transcript of hearing on defendant's motion in limine and motion to strike [Doc. ##68; 103]; defendant's renewed motion in limine [Doc. #93]; notice of additional authority in further support of defendant's renewed motion in limine [Doc. #112]; and plaintiff's objection to renewed motion in limine [Doc. #114].

Defendant seeks to preclude Mr. McNamara's expert testimony
as proffered in his October 12, 2012 revised expert report.
[Doc. #93].  Mr. McNamara's revised expert report consists of
ten (10) bullet points setting forth his expert opinions,
including:

- "[B]ased on the reasonable person Human Resource standard, the
  company failed to take appropriate steps to investigate and
  take necessary action to stop these Discriminatory actions."

- "Based on Mr. Borgia's and Ms. Beach's deposition testimonies,
  the company had a 'zero tolerance policy' against harassment
  and discrimination. However, when any discriminatory comments,
  drawings and behavior were validated through meetings with
  witnesses, there were no actions taken against the
  perpetrators as per a 'zero tolerance policy.'"

- "[T]here appears there are no formal policies against
  discrimination and intimidation."

- "Based on my review of the above captioned case file, there is
  no evidence that the company took any action to stop the
  discriminatory and intimidating acts of coworkers and
  management against Mr. Kovaco."

- "Based on Dorothy Beach's deposition testimony, Human
  Resources was consulted on discipline issues, prior to the
  discipline being applied by management.  However, in the case
  of Mr. Kovaco's suspension, Ms. Beach states that Human
  Resources was not consulted prior to his suspension.  This is
  one of many examples of the company's policies and procedures
  being applied inconsistently."

- "Frequently, in the field of Human Resources, employees with
  disabilities will request a reasonable accommodation.  It is
  standard practice that when such a request is within reason
  and makes good business sense the request is granted. This was
  not the case with Mr. Kovaco's request."

Mr. McNamara came to such opinions "[a]fter careful review of
the [] case file", although he fails to list what exactly
comprises the case file. [Id.].  Mr. McNamara concludes his
revised expert report with a summary of his opinions and
observations, including that "it is [his] Expert Opinion that
the company did not insure a workplace free of discrimination
and intimidation." [Doc. #47-1].

## II.  Legal Standard

In determining whether to admit expert testimony, the Court's discretion is principally governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles of methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see also Nimely v. City of N.Y., 414 F.3d 381, 395 (2d Cir. 2005). "The Supreme Court in Daubert, 509 U.S. at 597, 113 S. Ct. 2786, made clear that Rule 702 charges district courts with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" Rieger v. Orlor, Inc., 427 F. Supp. 2d 99, 102 (D. Conn. 2006) (citing See also Nimely, 414 F.3d at 396).

The Second Circuit has articulated four inquiries that a district court must undertake when determining whether expert testimony is admissible under Rule 702:

> (1) whether the "witness is 'qualified as an expert' to testify as to a particular matter," (2) whether "the opinion is based upon reliable data and methodology," (3) whether the expert's testimony on the particular matter is relevant because it will assist the trier of fact; and (4) pursuant to Rule 403 whether the testimony's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Glowczenski v. Taser Int'l, Inc., CV04-4052 WDW, 2012 WL 976050, at *4 (E.D.N.Y. Mar. 22, 2012)(citing Nimely, 414 F.3d at 397; see also Deutsch v. Novartis Pharm. Corp., 768 F. Supp. 2d 420 (E.D.N.Y. 2011)). "[T]he district court should not admit

testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without an expert's help." Rieger, 427 F. Supp. 2d at 103 (quoting United States v. Mulder, 273 F.3d 91, 101 (2d Cir. 2001)).  Indeed, "although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating the ultimate legal conclusions based on those facts." Rieger, 427 F. Supp. 2d at 103 (quoting United States v. Bilzeran, 926 F.2d 1285, 1294 (2d Cir. 1991)).

## III. Discussion

Defendant objects to Mr. McNamara's proffered expert testimony on reliability and relevancy grounds.  Defendant argues that Mr. McNamara's proffered testimony is not reliable because it is not based on any tested human resources theory or technique.  Defendant also contends that Mr. McNamara's proposed testimony is not helpful because he assumes the truth of plaintiff's allegations, oversteps the bounds of expert testimony by basing his opinions solely on plaintiff's allegations, and offers legal conclusions, usurping the role of the jury.  Finally, defendant contends that Mr. McNamara's proffered testimony is unduly prejudicial under Federal Rule of Evidence 403.  Plaintiff responds that he seeks to utilize Mr. McNamara to provide expert testimony as to accepted practices, policies and procedures in the field of human resources, and that plaintiff does not intend to offer expert testimony about the ultimate issues in this case. [Doc. #47, at 2].

### 1. McNamara's Qualifications

Although defendant questions whether Mr. McNamara is qualified to testify as an expert witness, defendant does not

explicitly challenge Mr. McNamara's qualifications. Mr. McNamara holds a Bachelors of Science in Psychology from Iona College. He has an Advanced Certificate in Employee Relations Law from the Institute for Applied Management & Law, Inc.  As previously noted, he worked as the Director of Human Resources for Phillip Morris USA for nearly eighteen years before becoming president of his own consulting company in 1996.  Prior to becoming the Director of Human Resources for Phillip Morris, Mr. McNamara served as a Region Employee Relations Manager for four years, where he was responsible for all human resource activities for a sales force operating in ten states.  He also conducted investigations into allegations of employee misconduct. Mr. McNamara lists a significant number of his "accomplishments" while working as Phillip Morris' Director of Human Resources, including directing the development of human resource programs and services, directing the handling of employee complaints and EEO cases and charges, initiating and supervising revisions to policy and procedure manuals and employee handbooks, and interacting with senior legal counsel on issues such as policy interpretation, organization practices, and legal settlements. Mr. McNamara further represents that his experience includes "expertise in policy interpretation, organizational practices and legal settlements." Mr. McNamara's company provides organization and management development consulting, including providing "expertise" in employee relations, management development, and policy and program design. Mr. McNamara is a member of various professional organizations, including the Society for Human Resources Management.  He also represents that

he has experience testifying in wrongful termination suits.  The Court finds that Mr. McNamara is qualified by experience to offer opinions regarding prevailing standards and practices in the human resources field.

   2. **Relevance and Reliability**

   As an initial matter, the Court finds that Mr. McNamara should be limited to serving as a rebuttal witness. Plaintiff repeatedly asserts that he "intends to offer McNamara's testimony to <u>counter</u> that of Defendant's human resources employees," who Plaintiff speculates "will function as quasi-experts and testify that they satisfactorily accommodated Plaintiff, followed a zero tolerance policy, and followed their progressive discipline policy."  (emphasis added) [Doc. #114, at 2, 3].  For example, "[p]laintiff <u>anticipates</u> that supervisors for Defendant Company (sic) will testify on a number of subjects within the field of human resources[…]" and therefore "plaintiff requires an expert in order to provide opinion and testimony from a qualified source as to the applicable policy practice or procedure within the field of human resources under the circumstances." (emphasis added) [Doc. #47, at 5].  Therefore, "[p]laintiff intends to have Mr. McNamara <u>counter</u> [defense] witnesses and explain concepts like 'reasonable accommodation,' 'progressive discipline,' and 'zero tolerance policy' and testify whether, in his experience, the Defendant's action comported with his understanding of those concepts." (emphasis added) [Doc. #114, at 2].  Plaintiff speculates as to the testimony of defendant's witnesses, and admittedly seeks to offer Mr. McNamara's testimony to "counter" these witnesses'

anticipated testimony.  Accordingly, whether any or all of Mr. McNamara's opinions are relevant will depend on the testimony presented during defendant's case-in-chief. Under these circumstances, the Court finds that Mr. McNamara should be limited to a rebuttal witness.

Nevertheless, the Court has carefully reviewed Mr. McNamara's October 10, 2012 revised expert report in anticipation that he may be called to testify on rebuttal. During oral argument on the initial motion in limine, the Court thoroughly vetted the revised expert report and requested plaintiff's counsel to identify the portions of the revised report that constituted impermissible legal conclusions. [Doc. #103, Feb. 7, 2013 Hrg. Tr., 29:18-33:21].  Defense counsel also had an opportunity to identify the portions of the revised expert report believed to be impermissible legal conclusion. [Id. at 38:11-44:5].  After considering the arguments of the parties, and their written submissions, the Court finds that the majority of Mr. McNamara's revised expert report constitutes impermissible legal conclusions and/or invades the province of the jury, and therefore should be precluded to the extent these conclusions constitute the substance of Mr. McNamara's proposed expert testimony.  The Court will not delineate line by line the portions of Mr. McNamara's report that constitute improper legal conclusions.  However, **examples** of his opinions that are impermissible legal conclusions and/or invade the province of the jury include:

- "Based on the deposition testimonies of Phillip Borgia and Dorothy Beach, the company failed to follow their employee complaint investigation procedures, when Mr. Kovaco

complained numerous times about coworkers calling him discriminatory names, drawing and posting discriminatory pictures and making discriminatory comments. His complaints were never investigated, as per company policy, to determine the validity or severity. In fact, based on the reasonable person Human Resource standard, the company failed to take appropriate steps to investigate and take necessary action to stop these Discriminatory (sic) actions." [Doc. #47-1, at 6].

- "[W]hen any discriminatory comments, drawings and behavior were validated through meetings and witnesses, there were no actions taken against the perpetrators as per a 'zero tolerance policy'." [Id. at 7].

- "Although Mr. Borgia and Ms. Beach state, in their deposition testimonies, that the company has a 'zero tolerance' policy against discrimination, during my review of the above captioned case file, there appears there are no formal policies against discrimination and intimidation." [Id.].

- "Based on the deposition testimonies of Mr. Borgia and Mr. Kovaco, several members of management, during a meeting with Mr. Kovaco on March 29, 2010 attempted to convince him to resign his position. This attempt is in direct conflict with the standards of a well managed Human Resources (sic) function. Management should never need to resort to attempting to convince an employee to resign v. (sic) being terminated. If the employee warrants a termination, they should be terminated, not convinced to resign." [Id.].

- "Based on my review of the above captioned case file, there is no evidence that the company took any action to stop the discriminatory and intimidating acts of coworkers and management against Mr. Kovaco. There is no supporting documentation of any action. There was no formal discipline of any of the management or employees involved in the discriminatory and intimidating behavior[…] When in my professional opinion, no reasonable person should be subjected to this type of ongoing egregious behavior based on their age and ethnicity." [Id.].

- "Based on Dorothy Beach's deposition testimony, Human Resources was consulted on discipline issues, prior to the discipline being applied by management. However, in the case of Mr. Kovaco's suspension, Ms. Beach states that Human Resources was not consulted prior to the suspension. This is one of many examples of the company's policies and procedures being applied inconsistently." [Id. at 8].

- Based on Dorothy Beach's deposition testimony, she was informed by Mr. Kovaco, that he witnessed Tom Polson putting company steel in his personal car. Mr. Kovaco requested that Ms. Beach immediately investigate the theft and she refused. Further, there was never a formal investigation of this complaint. Nor was there any disciplinary action taken against Mr. Polson. This

incident further substantiates that the company has
different standards for different people." [<u>Id.</u>].

- "Based on the aforementioned observations, it is my Expert
  Opinion (sic) that the company did not insure (sic) a
  workplace free of discrimination and intimidation. In fact,
  it is clear, based on the deposition testimonies provided,
  that Mr. Kovaco was ridiculed, humiliated and intimidated,
  based on national origin and disability.  The company did
  nothing to stop or prevent this egregious behavior.  The
  environment at Rockbestos-Surprenant Cable Corp. made it
  difficult and at times impossible for Mr. Kovaco to perform
  his job." [<u>Id.</u>].

The above are just some examples of Mr. McNamara's opinions that
include legal conclusions based on his understanding of certain
facts, which impermissibly invade the jury's province to apply
the applicable law to the facts they find and reach ultimate
legal conclusions.  <u>Bilzerian</u>, 926 F. 2d at 1294. The Court will
preclude Mr. McNamara's testimony to the extent that it
substitutes his judgment for that of the jury.

On the other hand, there are certain opinions that may be
admissible on rebuttal so long as Mr. McNamara avoids usurping
the Court's role in instructing the jury.  Again, by way of
example, Mr. McNamara's experience in human resources qualifies
him to explain, <u>inter alia</u>, what "progressive discipline" is,
what a "zero tolerance policy" is, and how employers typically
engage in the process of accommodating disabled employees. "This
testimony could assist the trier of fact insofar as it would
help to make sense of certain concepts that would likely be
foreign to a jury." <u>Hollen v. Chu</u>, No. CV-11-5045-EFS, 2013 WL
5306594, at *5 (E.D. Wash. Sept. 19, 2013).  However, before any
such testimony will be permitted, plaintiff must provide
defendant by March 21, 2014, a final report that omits all
improper opinions.  No new opinions may be included in the final

10

report that were not previously disclosed in Mr. McNamara's earlier reports.

Defendant also argues that Mr. McNamara's proposed testimony is not reliable because his report does not reference any "'tested' human resources 'theory or technique,'" nor does it reference one that has been peer reviewed or measured by scientific standards. [Doc. #26-1, at 8]. Plaintiff contends that Mr. McNamara's proposed testimony, i.e. describing generally accepted human resources policies and practices, is reliable and stresses that the Daubert test of reliability is "flexible." [Doc. #47, at 6]. The Court agrees that in his revised expert report, Mr. McNamara does not adequately explain or elaborate the standard human resources concepts he seeks to opine on. Indeed, where his expert opinions primarily rely on his experience, he should "explain 'how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Arjangrad v. JP Morgan Chase Bank, N.A., No. 3:10cv1157, 2012 WL 1890372, at *5 (D. Oregon May 23, 2012) (quoting Fed. R. Evid. 702, Advisory Comm. Notes, 2000 Amendments). His report as it currently stands does not do so. However, in light of the Court's order that Mr. McNamara submit a final report omitting all impermissible opinions, he should also further explain how his experience leads to his conclusions, why his experience is a sufficient basis for his opinions, and how that experience is reliably applied to the facts of this case. Furthermore, to the Court's knowledge, defendant has yet to depose Mr. McNamara. Mr. McNamara's

deposition will provide additional opportunity for defendant to further probe the reliability of Mr. McNamara's opinions.  If after a review of Mr. McNamara's final report and deposition testimony, defendant is still not satisfied that Mr. McNamara's opinions meet the test of reliability, defendant may seek to preclude Mr. McNamara's testimony.

### 3. **Prejudice**

Finally, defendant argues that Mr. McNamara's proposed testimony should be precluded under Rule of Evidence 403 because its probative value is substantially outweighed by the possibility of either misleading the jury, causing unfair prejudice, or both. [Doc. #26-1, at 12].  Any potential prejudice or misleading of the jury caused by Mr. McNamara's testimony has been addressed by the preclusion of his impermissible opinions, and also by limiting Mr. McNamara to serving as a rebuttal witness.  Moreover, any other concerns regarding the credence a jury may give to Mr. McNamara's testimony may be addressed by an appropriate limiting instruction at the time of trial.  Therefore, the Court will not preclude Mr. McNamara's proffered testimony, as limited by the Court, on Rule 403 grounds.

## IV.  Conclusion

Therefore, defendant's renewed motion in limine [Doc. #93] is GRANTED in part and DENIED in part, as set forth above.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); and D. Conn. L. Civ. R. 72.2.

As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport, this 20th day of February 2014.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE